MABEL F. WILSON, complainant,

*v.*

CLARENCE F. WILSON, defendant.

[Decided October 1st, 1935.]

*Mr. Sam Lieberman,* for the petitioning executor.

*Messrs. Waugh, Torppey & Hoffman,* for the defendant.

Herr, A. M.

This is an application on verified petition, order to show cause and answering affidavits, brought by Philip Lowits as executor of the last will and testament of Mabel F. Wilson (the above named complainant), deceased, seeking an adjudication fixing the total amount of arrearages of temporary maintenance claimed to be due and unpaid under an *ad interim* order in the cause, in order that he may recover the same from the defendant by the process either of this court, or of the supreme court by virtue of *P. L. 1902 p. 524; 1 Comp. Stat. 1910 p. 425 § 44; Rooney v. Rooney, 102 N. J. Law 551; 133 Atl. Rep. 752.*

The original bill was filed by the said Mabel F. Wilson on July 29th, 1929, alleging abandonment and failure to maintain, and praying for a decree of separate maintenance under section 26 of the Divorce act. *P. L. 1907 p. 482; 2 Comp. Stat. 1910 p. 2038 § 26.* By an order entered on October 23d, 1929, the defendant, Clarence F. Wilson, was directed to pay her the sum of $20 each week for her temporary support and maintenance pending the suit. No further steps were taken in the cause by either party until the present application by the executor of Mabel F. Wilson, who died on June 18th, 1934.

The executor claims that the defendant neglected to pay to his wife the sums directed by the order to be paid that the arrearages up to the date of her death aggregate $2,370, and that he is obliged to seek the collection of that sum from the defendant in order to pay claims of creditors of the estate whose debts must otherwise remain unsatisfied. The executor's petition does not contain a prayer for an order to revive the suit for the purpose of fixing the arrears, but under rule 60 of this court an order to revive for that purpose may nevertheless be advised if the allegations and proofs disclose that the executor has a meritorious claim to the relief prayed.

The defendant resists the application on the ground that shortly after the entry of the order for temporary maintenance the parties by their conduct destroyed the cause of action upon which the suit was based, if such cause had ever existed, on the ground that the action has remained too long

dormant for want of prosecution, on the ground that the alleged arrearages are not in the nature of a debt and did not survive the death of Mrs. Wilson, on the ground that the court is without jurisdiction to grant the relief prayed because the suit was abated by the death of the complainant and finally on the ground that the order for temporary maintenance was secured by fraud on the part of Mrs. Wilson. The defendant also disputes the amount of arrearages claimed, but admits that there are arrearages in some smaller sum if the order remained effective until the complainant's death.

The proofs before the court on this application consist solely of *ex parte* affidavits, the parties having agreed to submit the present controversy thereon, without other evidence.

The affidavits in support of the defendant's position show, without contradiction, that from the time of the entry of the order for maintenance *pendente lite* to the time of his wife's death the defendant had frequently visited her and was on friendly terms. In this he is corroborated by the affidavit of his son. It further appears from the defendant's affidavit, without contradiction, that during this entire period the complainant and defendant often had sexual relations with each other, that the defendant frequently urged his wife to live with him again, that she consistently held out hope that she would at some time do so and that finally, shortly before her death, she agreed to do so and presumably would have done so had not her death intervened. According to the uncontradicted evidence of the defendant the only obstacle to a complete reconciliation was the complainant's unwillingness to dismiss a boarder in her home, whose presence there had been the original cause of her husband's leaving, and continued to be the sole cause of his remaining away. The defendant further testifies that during this whole period he paid the complainant money for her support and maintenance, not in the amounts and upon the dates required by the order, but in accordance with his means and to her complete satisfaction.

The complainant's failure during this entire period of about five years to take any step in the prosecution of her action is a circumstance corroborative of the defendant's evi-

dence that her alleged cause of action was fully condoned and that a situation not far from complete reconciliation existed. There is no other proof tending to excuse or explain the neglect of the complainant to advance her cause seasonably to final hearing. The payments shown to have been made by the defendant to his wife from the date of the order vary from the terms of the order both in amounts and in dates of payment to such an extent as to further corroborate his testimony and to justify the conclusion that she intentionally waived her rights under the order, at least to the extent of all unpaid installments thereunder.

The suit for separate maintenance was based upon the allegations of abandonment and refusal to maintain. The proofs show that, whether or not the defendant had been guilty of abandonment prior to the filing of the bill, he ceased to be guilty of that offense very shortly thereafter. If there was not a substantial reconciliation, at least there was a complete condonation of the alleged abandonment, coupled with a voluntary acceptance by the wife of less money than the order entitled her to receive and a partial *consortium,* falling short of a complete reconciliation only because of the wife's unwillingness to dismiss the star boarder and her unjustified resistence to her husband's constant efforts to re-establish the home. In this case we once more behold the eternal triangle, but with the woman at the apex. In spite of the ubiquitous star boarder, she continued in the uninterrupted enjoyment with her husband of all of the advantages (without any of the burdens) of bed and board, which by her bill she complains that her husband refused to her. Is it material whose bed it was if they shared it, or whose board it was if his means supplied it? Legally the situation was the same as if the parties had been living apart by mutual consent without fault on the part of the defendant. It was a situation fully as inconsistent with the notion of abandonment as if there had been a complete reconciliation, and as destructive of the alleged cause of action. And when the cause of action, if any, was destroyed, the suit based thereon was necessarily terminated as completely and effectually as if a decree of dismissal had been entered. *Byrne* v. *Byrne, 93 N. J. Eq. 5;*

*114 Atl. Rep. 754; Kuntz v. Kuntz, 80 N. J. Eq. 429; 83 Atl. Rep. 787.*

The termination of the suit rendered the order for maintenance therein prospectively inoperative, so that no installments accrued thereon after such termination. Had a decree of dismissal been entered at that time, as it would have been upon application therefor, it might have contained an express reservation in complainant's favor which would have enabled her to collect any prior unpaid installments, but its entry would have effectually terminated the order as to all future installments. See *Lief v. Lief, 14 N. J. Mis. R. 27; 178 All. Rep. 762; Yoder v. Yoder (Wash.), 178 Pac. Rep. 474; 3 A. L. R. 1104; Bell v. Bell, 214 Ala. 573; 108 So. Rep. 375; 45 A. L. R. 935.*

If there were proof that at the time of the termination of this suit by reason of the conduct of the complainant as above set forth there were any unpaid arrearages under the order, no doubt the court would have jurisdiction to make an order at this time fixing the amount thereof, and might reserve to the complainant's executor the right to collect the same by a suitable provision in the decree of dismissal when it is entered; although by so doing the court would depart from the settled practice of the ecclesiastical courts in refusing to enforce collection of installments more than one year in arrears. See *De Blaquiere v. De Blaquiere, 3 Hagg. Ec. 322; 162 Eng. Reprint 1173; Lynde v. Lynde, 64 N. J. Eq. 736, 753; 52 Atl. Rep. 694.* But there is no such proof. On the contrary the defendant is shown to have paid his wife far more money in the years subsequent to such termination and prior to her death than would have been required to satisfy any possible amount of arrearages accruing prior to the termination of the order.

Obviously, therefore, no order can be made to fix the amount of arrearages which do not exist, and it follows that the executor's application must be denied.

But the executor contends that the evidence given by the defendant himself, upon which is largely based the conclusion that the suit terminated shortly after the entry of the *ad interim* order because of the conduct of the complainant,

should not have been considered by the court under section 4 of the Evidence act (as amended, *P. L. 1931 p. 305 ch. 163; N. J. Stat. Annual p. 15S § 70-4*), in spite of the executor's having first testified by his own affidavit to transactions between complainant and defendant, and that the court *sua sponte* should disregard the defendant's evidence as being opposed to the policy of the law and dangerous to the administration of justice. The evidence given by the defendant as to transactions and conversations with his wife with respect to the matter in issue might well have been suppressed by the court on its own motion, under the authority of *Monfort* v. *Rowland, 38 N. J. Eq. 181,* had not the executor by his affidavit first testified to such transactions. Indeed, the only evidence sustaining the executor's application is his own. The statute was designed to preserve a just mutuality in the right to testify. It has always been considered essential to the ends of justice that when death has sealed the lips of one party, the law should seal the lips of the other. The rule is designed to protect the estate of an owner whose death has rendered him powerless to defend. But a just mutuality is not achieved by silencing the living if the dead, through the medium and choice of his representative, elects to speak. For the representative of the decedent, if he chooses to speak, speaks through the lips of the decedent. It is his privilege to waive the protection of the statute; if he speaks, the law will not enjoin silence upon the party who still lives. The statutory protection is not imposed upon the executor against his will. In the instant case the executor has made his election. By himself first testifying to transactions between the complainant and the defendant, he has opened the door to the defendant's testimony as to such transactions. *Kapalczynski* v. *Sitniski, 91 N. J. Eq. 524; 111 Atl. Rep. 24.*

But assuming the executor's argument to be sound, that the court should read his affidavit and at the same time suppress the affidavit of the defendant, and so should find itself without evidence upon which it can conclude that there was condonation by the complainant of the alleged abandonment, or that there was any agreement between the parties, express or implied, inconsistent with and destructive of the continued

existence of the alleged cause of action, the executor's application must still be denied upon other grounds.

If the jurisdiction of the court to order *ad interim* maintenance to the wife were derived from the statute, such *ad interim* orders would no doubt be subject to all of the provisions and limitations of section 26 of the Divorce act, to the same extent as final decrees under that section are so subject. It seems doubtful whether the court has authority under that section, by orders intended to operate retroactively, to reduce or cancel arrearages of alimony or maintenance fixed by or subsequent to final decree, or to accomplish such a result indirectly by declining to make orders designed to facilitate the recovery of such arrearages. The question does not seem to have come squarely before our courts. *Dicta* will be found in *Lynde* v. *Lynde* (*Court of Errors and Appeals*), *64 N. J. Eq. 736*, and in *Bolton* v. *Bolton* (*Supreme Court*), *86 N. J. Law 69; affirmed* (*Court of Errors and Appeals*), *86 N. J. Law 622.* In this connection see, also, *Sistaire* v. *Sistaire, 218 U. S. 1; 54 L. Ed. 905; 30 S. Ct. 682; 28 L. R. A.* (*N. S.*) *1068; Lynde* v. *Lynde, 181 U. S. 183; 45 L. Ed. 810; Barber* v. *Barber, 21 How.* (*U. S.*) *582; 16 L. Ed. 226; Kossower* v. *Kossower* (*Court of Errors and Appeals*), *142 Atl. Rep. 30;* notes, *94 A. L. R. 331; 41 A. L. R. 1419; 46 A. L. R. 1200; 57 A. L. R. 1113.*

But whatever the law of this state may be respecting the vested character of arrearages of permanent alimony or maintenance, arrearages of temporary maintenance in suits under section 26 stand in a different category. While it is settled that the jurisdiction of the court to grant permanent maintenance is derived exclusively from section 26 of the Divorce act (*Hervey* v. *Hervey, 56 N. J. Eq. 424, 426; 39 Atl. Rep. 762; Anshutz* v. *Anshutz, 16 N. J. Eq. 162; Yule* v. *Yule, 10 N. J. Eq. 138*), that section does not purport to authorize the court to award maintenance *pendente lite*. Until the year 1902 the statutory provision for decreeing alimony in divorce suits (now section 25) contained no authority to order alimony *pendente lite*. Act of December 2d, 1794, *Pat. Laws 1800 p. 143; Rev. 1877 p. 317 § 19; 2 Gen. S. 1895 p. 1269 § 19; P. L. 1902 p. 507 § 19; P. L. 1907 p. 481 § 25; P. L.*

*1933 p. 296; N. J. Stat. Annual 1933 § 62-25.* The statutory provision for decreeing separate maintenance (now section 26) on the other hand, has never contained authority to order temporary maintenance. *P. L. 1820 p. 668; Rev. 1877 p. 318 § 20; 2 Gen. S. 1895 p. 1270 § 20; P. L. 1902 p. 508 § 20; P. L. 1907 p. 482; 2 Comp. Stat. p. 2038 § 26.*

In spite of the lack of statutory authority to order *ad interim* allowances for the wife, in divorce cases until 1902 and in maintenance suits up to the present time, this court has never hesitated to make such *pendente lite* provision for the wife in proper cases in both classes of suits. *Amos* v. *Amos, 4 N. J. Eq. 171; Patterson* v. *Patterson, 5 N. J. Eq. 389; Marker* v. *Marker, 11 N. J. Eq. 256; Vreeland* v. *Vreeland, 18 N. J. Eq. 43; Marsh* v. *Marsh, 14 N. J. Eq. 315, 318.* No distinction in principle is made in the early cases with respect to the temporary allowance awarded to the wife, whether such allowance was made in a suit for divorce or in a suit for separate maintenance. Such temporary allowance in both classes of cases was termed "alimony *pendente lite,*" and it was never supposed that the authority of the court to make such temporary allowances must be found in the statute. On the contrary it was recognized that the jurisdiction is inherent in the court. Thus Vice-Chancellor Van Fleet in the separate maintenance suit of *Westerfield* v. *Westerfield, 36 N. J. Eq. 195, 197,* observed:

"An application for alimony *pendente lite* stands now solely on the ground of necessity. * * * At common law, by the marriage contract, the husband acquired complete control over all property owned by his wife at the time of the marriage, or which she might acquire during coverture. In such a state of affairs, unless the court required the husband to support his wife, and to furnish her with the means of prosecuting her suit or defending his, she would be left, during the litigation, both destitute and defenseless."

The court of chancery having jurisdiction by statute to decree alimony and maintenance in divorce and separate maintenance suits must of necessity have power to order temporary support and suit moneys in order to enable the wife to prosecute or defend such suits and to maintain herself

until decree. The power to make such temporary, *pendente lite* provision is a part of the fundamental jurisdiction of courts of equity in all cases where authority is granted to the courts to hear and determine such causes. The power to allow support and suit moneys to the wife in order to enable her to maintain herself pending the action, and to prosecute or defend the same, must be regarded as incidental and necessary in all matrimonial actions. It is grounded upon the plainest principles of reason and justice, for without such power the rights of the woman, in many cases, could not be adequately protected. See *Wooten* v. *Court (Mont.), 189 Pac. Rep. 233; 9 A. L. R. 1212.*

Dr. Bishop in speaking of temporary alimony (*2 Bish. Mar., Div. & Sep. 1891 § 915*) says that the "doctrine of temporary alimony is fundamental in the law, not only in the law of divorce, but in our entire legal system. It is not mere practice. Without the aid of any statute it is binding on our tribunals because inherent in natural justice and natural jurisprudence; because it is a part of our system of general law; because it was law in the ecclesiastical courts of England whence it traveled to our states. Here are three distinct grounds upon any one of which, without the others, the doctrine would rest secure; much more, therefore, is it secure while resting on all three."

This inherent power of the court of chancery to order *ad interim* allowances for maintenance and suit money in suits between husband and wife is not confined to suits authorized by the Divorce act, but may be exercised in any suit between husband and wife where as a condition inherent in the cause of action the wife must remain separate from her husband pending the suit, or where because of the husband's misconduct it becomes necessary, as an incident to a suit pending between them, to compel him to furnish her with the means to maintain herself and to prosecute or defend the suit.

Thus in *Lambert* v. *Lambert (1767), 2 Bro. P. C. 18; 1 Eng. Reprint 764,* the House of Lords affirmed an order for the allowance of suit money and maintenance *pendente lite* to a wife who had been compelled because of the husband's extreme cruelty to separate herself from him, upon her bill

to set aside on the ground of duress a deed of separation containing an inadequate provision.

Lord Loughborough in *Ball* v. *Montgomery (1793)*, *2 Ves. Jr. 191, 195; 30 Eng. Reprint 588,* voiced the much quoted *dictum:*

"* * * I take it to be now the established law, that no court, not even the ecclesiastical court, has any original jurisdiction to give a wife separate maintenance. It is always as incidental to some other matter, that she becomes entitled to a separate provision. If she applies in this court upon a *supplicavit* for security of the peace against her husband, and it is necessary, that she should live apart, as incidental to that the *chancellor* will allow her separate maintenance: so in the ecclesiastical court, if it is necessary for a divorce *a mensa et thoro propter saevitiam."*

See, also, *Duncan* v. *Duncan, 19 Ves. Jr. 394; 34 Eng. Reprint 564,* in which Sir William Grant, master of the rolls, quotes Lord Loughborough's *dictum* with approval (although inadvertently ascribing it to Lord Rosslyn) and cites earlier cases including *Oxenden* v. *Oxenden, 2 Vern. 493; 23 Eng. Reprint (1705) 916.*

The case of *Biddle* v. *Biddle, 104 N. J. Eq. 313; 145 Atl. Rep. 639,* which was upon a bill to enforce a separation agreement, seems to be the only case in New Jersey in which a narrower view is taken of the power of the court in cases outside of the statute. There alimony *pendente lite* was denied (although suit money was allowed to the wife) on the authority of several earlier cases in this state, none of which, on examination, appear to be in point. In the case of *Yule* v. *Yule, 10 N. J. Eq. 138, 144,* one of the cases relied upon, the chancellor declined to grant a wife *permanent* maintenance where she failed to prove a case within the purview of the statute. Likewise the case of *Anshutz* v. *Anshutz, supra,* to which may be added *Margarum* v. *Margarum, 57 N. J. Eq. 249; 41 Atl. Rep. 357,* and *Patton* v. *Patton (Court of Chancery), 58 Atl. Rep. 1019,* involved permanent maintenance. See, also, *Hervey* v. *Hervey, supra; Lynde* v. *Lynde, 64 N. J. Eq. 736; 52 Atl. Rep. 694; Cary* v. *Cary, 11 N. J. Eq. 400; Miller* v. *Miller, 1 N. J. Eq. 386.*

*Rockwell* v. *Morgan, 13 N. J. Eq. 119,* cited in the *Biddle Case,* was a bill for dower instituted by a wife against the *devisees* under her deceased husband's will. By petition she asked that the rents of a part of the real estate be paid to her *pendente lite.* The application for support *pendente lite* was denied on the ground that the claim was not against her husband or his estate, but against the devisees. She had no claim to alimony or maintenance from the devisees who were the children of the decedent. The chancellor (at *p. 120*) very significantly observed that:

"The claim clearly does not fall within the *equitable* principle which allows to a wife a *maintenance during the progress of a suit against her husband.* * * * In a controversy *with her husband* it is just that she should have the means of enforcing her claim or of testing its validity." (Italics mine.)

The *Biddle Case* recognizes the general rule that "in litigation between a husband and wife, the wife is regarded as a privileged suitor and is entitled to aid from her husband when necessary to enable her to properly present her cause," which was the basis for the court's allowance of suit money, although not thought to justify *pendente lite* maintenance. No authority is cited for such a distinction and it appears to have been made in none of the earlier cases. The *Biddle Case* seems to be out of line with the well established principle laid down by the authorities above cited, and if followed would seem to impose an unwise and unnecessary restriction upon the inherent power of the court. The court in the *Biddle Case* appears to have overlooked the case of *Vroom* v. *Marsh, 29 N. J. Eq. 15,* in which Chancellor Runyon allowed a wife temporary alimony on a bill filed by her husband to annul their marriage on the ground of duress. The suit came within the general equity jurisdiction of the court. The authority to grant alimony *pendente lite* in annulment cases for fraud or duress was not derived from any statute prior to 1902 and the present section 25 of the Divorce act relates to temporary alimony in only those annulment cases which are brought upon statutory grounds. See *Avakian* v. *Avakian, 69 N. J. Eq. 89, 99; affirmed, 69 N. J. Eq. 834; 60 Atl. Rep. 521.*

In any event the *Biddle Case* is not in point so far as statutory actions for divorce, annulment and separate maintenance are concerned. With respect to such actions the authorities are in accord in recognizing an inherent jurisdiction to order *pendente lite* allowances to the wife, so that whatever limiting effect the provisions of section 26 may have upon the court's power to modify existing final decrees for separate maintenance so far as they may operate to reduce or cancel the defendant's obligation to pay past due arrearages fixed by such decrees, such statutory provisions are inapplicable in the case of arrearages under *ad interim* orders for temporary maintenance. Such orders, until final decree, remain within the complete control of the court. They may be modified from time to time, in the court's discretion, retrospectively as well as prospectively, even to the extent of extinguishing the husband's obligation to pay arrearages. They are in no different category from *ad interim* orders made in non-matrimonial suits, all of such orders until final decree being in complete control of the court. *Fourniquet* v. *Perkins, 16 How. (U. S.) 82; 14 L. Ed. 854; 10 R. C. L. 562 § 350; 21 C. J. 703 § 873.* In matrimonial litigation it is particularly important for the court to maintain such full control of its *ad interim* orders because of the summary nature of the hearings upon which such orders are based, because *ex necessitate* the benefit of every reasonable doubt must be accorded to the wife pending final hearing, because the circumstances of the parties frequently change pending the suit, and because of the regrettable fact that in matrimonial causes the bitterness of the parties toward each other often renders their affidavits unreliable to an extent which can be determined only upon the final hearing.

It follows that a wife, pending her suit for separate maintenance, has no vested right to installments of temporary maintenance as they accrue. Until final decree the court may at any time for sufficient cause annul and vacate its prior orders and so wipe out all unpaid accumulations thereunder. Such "sufficient cause" need not amount to fraud, as in *Wittlinger* v. *Wittlinger, 13 N. J. Mis. R. 349; 178 Atl. Rep. 97,* but it is open to the court to balance all of the equities.

Now in the instant case, if the evidence of the defendant himself be disregarded, the proofs still show that during the period of five years intervening between the entry of the *ad interim* order and the death of the complainant the parties were on friendly terms, occasionally dining together and attending shows in each other's company, that during the whole period the complainant was receiving money from the defendant in amounts which apparently satisfied her and that after securing the order she took no further step in the cause. Under these circumstances, had she lived, it may be doubted whether she could have prevailed on an application to enforce payment of the alleged arrearages. The court would apparently have been free to adopt the arbitrary rule applied by the ecclesiastical courts and to have declined to enforce arrears extending beyond one year. Or the court might well have determined on the facts that the wife's conduct had been such as to mislead the defendant into believing she had dropped the case and so to have induced him to refrain from moving the same upon his answer, or from moving for its dismissal on account of the complainant's delay in its prosecution, and thereby perhaps relieving himself of the burden of the order.

However that may be, the death of the complainant in this case certainly calls for the application of an estoppel against her executor on the ground of laches, particularly because of the statutory estoppel assumed to have silenced the defendant by virtue of section 4 of the Evidence act as amended by *P. L. 1931 p. 305 (N. J. Stat. Annual 1931 § 70-4)*. The court feels far from confident of its ability to ascertain what sums if any are due and unpaid. Disregarding the defendant's testimony, the evidence is not of such a reliable quality as to warrant an order in accordance with the executor's prayer for relief. If the lips of the defendant are to be sealed by the statute and by the policy of the law, there remains no one with sufficient knowledge of the facts to justify the court in arriving at a judicial determination of the factual issues. Such a determination would hardly be more than conjecture. *Lutjen* v. *Lutjen (Court of Errors and Appeals), 64 N. J. Eq. 773; 53 Atl. Rep. 625.* See, also, *Dunham v. Adams, 82*

*N. J. Eq. 265, 269; 88 Atl. Rep. 696; Schuler* v. *Schuler, 114 N. J. Eq. 220, 222; 168 Atl. Rep. 468.*

The sole adverse equity urged by the executor is that there are unpaid creditors of the wife whose debts must remain unsatisfied unless he can collect his claim against the defendant. But since the statutory provisions of section 26 of the act do not apply to maintenance *pendente lite,* as above pointed out, there has been no limitation placed at any time upon the creditors' common law remedy. See *Avakian* v. *Avakian, supra; Hayward* v. *Hayward, 1 Swab. & T. 85; 164 Eng. Reprint 640.* It does not appear that any creditor in fact relied upon the order in extending credit to the wife, and further, as a matter of law, no creditor would have been justified in so relying. The interest of creditors does not tip the scales in favor of the executor's application.

The court is well aware that the effect of denying the executor's application is by indirection to cancel such arrearages as there may be. But this the court has power to do, and in the instant case, in the exercise of a sound discretion, ought to do.

It is unnecessary, therefore, to consider the other matters urged in defense of the application.

A decree of dismissal of the bill will be advised, on the court's own motion. It should not remain pending of record when in fact it has long since abated, and the court is in duty bound to decree its dismissal for want of jurisdiction. *Reid* v. *United States, 211 U. S. 529; 53 L. Ed. 313; 29 S. Ct. 171; Ysern* v. *Horter, 94 N. J. Eq. 135, 141; 118 Atl. Rep. 774; 15 C. J. 852 § 171.*

Such decree of dismissal, silent as to any accumulations of unpaid installments arising under the *ad interim* order, will as effectually dispose of the executor's claim as would an order denying his application. *Lief* v. *Lief, 14 N. J. Mis. R. 27; 178 Atl. Rep. 762.*