

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2005

# Kean v. Commissioner IRS

Precedential or Non-Precedential: Precedential

Docket No. 04-2931

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kean v. Commissioner IRS" (2005). *2005 Decisions.* Paper 1101.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1101

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NOS. 04-2931 & 04-3018
_____

PATRICIA P. KEAN
                    Appellant
          v.

COMMISSIONER OF INTERNAL REVENUE
                    Appellee

_____

ROBERT W. KEAN, III
                    Appellee
          v.

COMMISSIONER OF INTERNAL REVENUE
                    Appellant


_____

Consolidated Appeals from Decisions of the United States
Tax Court
(Docket Nos. 8966-00 & 9144-00)
Tax Court Judge: Honorable Arthur L. Nims, III
_____

Argued March 8, 2005

BEFORE: SCIRICA, Chief Judge, and ROTH and VAN
ANTWERPEN, Circuit Judges

(Filed May 10, 2005)

_____

OPINION

_____

Alan R. Adler (Argued)
10 North Park Place
Suite 320
Morristown, NJ  07960

Counsel for Appellant Patricia P. Kean


Bethany B. Hauser (Argued)
David I. Pincus
Teresa E. McLaughlin
United States Department of Justice
Tax Division
P.O. Box 502
Washington, DC  20044

Counsel for Appellee/Appellant
Commissioner of Internal Revenue

2

Jeffrey M. Garrod (Argued)
Orloff, Lowenbach, Stifelman & Siegel
101 Eisenhower Parkway
Roseland, NJ  07068-1082

Counsel for Appellee Robert W. Kean, III

VAN ANTWERPEN, <u>Circuit Judge</u>

These consolidated tax appeals arise from the Commissioner of Internal Revenue's tax treatment of payments made by Robert Kean, pursuant to a series of support orders issued *pendente lite* during a divorce proceeding.  The recipient of those payments, Patricia Kean, argues that the Commissioner and Tax Court erred in concluding that those payments were "alimony or separate maintenance payments" (hereinafter "alimony") as defined by I.R.C. § 71(b).

## I. FACTUAL AND PROCEDURAL HISTORY

Patricia P. Kean (Ms. Kean) and Robert W. Kean, III (Mr. Kean) were married on September 12, 1970 and have three children.  In October 1991, Ms. Kean brought an action for divorce from Mr. Kean in the Superior Court of New Jersey, Chancery Division-Family Part, Somerset County.  On April 7, 1992, while the action was pending, Judge Graham T. Ross, J.S.C., P.J.F.P., issued an order (the "April 7, 1992 Order") which required Mr. Kean to deposit $6,000 each month into a joint checking account maintained by Mr. and Ms. Kean.  Ms. Kean was instructed to use the funds from the

3

joint checking account to maintain herself, the children and the household. The court also required Mr. Kean to pay all household expenses, including the mortgage, taxes and utilities; pay all expenses for the children, including private school tuition; and maintain health insurance coverage and pay all unreimbursed medical expenses for Ms. Kean and the children.

On November 25, 1992, the court issued an order denying the parties' separate applications for physical custody of the children and required them to continue with the existing custodial arrangement. The order also instructed the parties to share equally in the legal authority and responsibility for major decisions concerning the children.

On March 5, 1993, the court stated that Ms. Kean had exclusive use of the $6,000 deposited in the joint checking account for the support of herself, the children, and the household (the "March 5, 1993 Order"). On April 23, 1993, the court further explained that the monthly $6,000 was to be used to pay for all shelter, transportation, and personal expenses of Ms. Kean and the children. On January 30, 1995, the court ordered Mr. Kean to make all future payments to Ms. Kean through the applicable probation department (the "January 30, 1995 Order").

On January 9, 1996, the court issued an order which continued the Kean's joint legal custody of the children and specified how physical custody of the children should be shared. On April 11, 1996, the court reduced Mr. Kean's *pendente lite* support obligation from $6,000 to $1,600 and

required him to pay all of the household bills and expenses of the children.  The court issued a Final Judgment of Divorce on February 19, 1997.

Pursuant to the applicable court orders, Mr. Kean paid Ms. Kean $54,000 for the taxable year 1992, $57,388 for the taxable year 1993, and $71,500 for the taxable year 1994.

From January 1 through February 10, 1995, Mr. Kean paid Ms. Kean $9,000 pursuant to the applicable court orders.  From March 6 through December 7, 1995, Mr. Kean continued his obligation by paying Ms. Kean $61,200 through the Somerset County Probation Department as required by the January 30, 1995 Order.  Ms. Kean reported no alimony income on her 1995 U.S. Individual Income Tax Return.  Mr. Kean claimed a $72,000 deduction for alimony paid on his 1995 U.S. Individual Income Tax Return.

For the taxable year 1996, Mr. Kean paid Ms. Kean $32,400 pursuant to the applicable court orders, through the Somerset County Probation Department.  Ms. Kean reported $14,400 in alimony income on her 1996 U.S. Individual Income Tax Return.  Mr. Kean claimed a $37,715 deduction for alimony paid on his 1996 U.S. Individual Income Tax Return.

On May 26, 2000, the Commissioner of Internal Revenue (the "Commissioner") issued a notice of deficiency to Ms. Kean asserting deficiencies in federal income tax of $14,229 for 1992, $17,419 for 1993, $20,116 for 1994, $18,390 for 1995, and $4,393 for 1996.  The Commissioner

also assessed additions to tax under I.R.C. § 6651(a)(1) for failure to timely file returns for 1992 and 1994. Id. On August 22, 2000, Ms. Kean timely petitioned the Tax Court for a redetermination of the deficiencies and additions to tax.

On May 26, 2000, the Commissioner also sent a notice of deficiency to Mr. Kean, asserting deficiencies in federal income tax of $27,584 for 1995 and $16,781 for 1996. Mr. Kean also petitioned the Tax Court for a redetermination of the deficiencies.

On June 4, 2003, the Tax Court issued an opinion addressing both of the Keans' cases in which it concluded that the payments made by Mr. Kean to Ms. Kean met the definition of "alimony" as detailed in I.R.C. § 71(b). On April 16, 2004, the Tax Court declared Ms. Kean deficient in income tax due for the taxable years 1992, 1993, 1994, 1995, and 1996 in the amounts of $14,229, $16,490, $19,936, $17,821 and $4,393, respectively. The Tax Court also found additions to tax due for the taxable years 1992 and 1994 in the amount of $3,557 and $4,984, respectively. On the same day, the tax court issued a decision declaring Mr. Kean deficient in income tax due for the taxable years 1995 and 1996 in the amounts of $585 and $1,382, respectively.

Ms. Kean timely appealed the decision in her case to this Court on July 6, 2004 and the Commissioner timely appealed the decision in Mr. Kean's case to this Court on July 14, 2004. The sole issue for us to decide is whether the *pendente lite* support payments should be considered "alimony or separate maintenance payments" for federal

6

taxation purposes.

## II. JURISDICTION AND STANDARD OF REVIEW

The Tax Court had jurisdiction over the petitions of Mr. Kean and Ms. Kean pursuant to I.R.C. §§ 6213(a), 6214 and 7442. This Court has jurisdiction over appeals from decisions of the Tax Court pursuant to 26 U.S.C. § 7482(a)(1), and we exercise plenary review over the legal conclusion of the Tax Court, Lazore v. Commissioner, 11 F.3d 1180, 1182 (3d Cir. 1993).

We note at the outset that although the Commissioner argues strenuously against Ms. Kean's position, he took an inconsistent stance with respect to Mr. Kean's case. This is a permissible practice to protect the public fisc and prevent the "whipsaw" effect of a decision in Ms. Kean's favor. Gerardo v. Commissioner, 552 F.2d 549, 555 (3d Cir. 1977). Mr. Kean does not dispute the relatively minimal deficiencies assessed to him by the Tax Court.

## III. ANALYSIS

An individual may deduct from his or her taxable income the payments he or she made during a taxable year if those payments are for alimony or separate maintenance. I.R.C. § 215(a). Consequently, the recipient of alimony payments must include those payments when calculating his or her gross income. I.R.C. 61(a)(8). Therefore, a determination that a payment is or is not "alimony," is also a determination of who must shoulder the tax burden of that

7

payment.

Alimony is defined in section 71(b) of the Internal Revenue Code.[1]  This section was originally enacted to provide a uniform definition of alimony so that alimony payments could be distinguished from property settlements

---

[1] I.R.C. § 71(b)(1) states:

(b) Alimony or separate maintenance payments defined. For purposes of this section--
(1) In general. The term "alimony or separate maintenance payment" means any payment in cash if--
(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

which receive different tax treatment. H.R. Rep. No. 98-432(II), at 1495 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1137. As the Sixth Circuit explained in Hoover v. Commissioner, 102 F.3d 842, 845 (6th Cir. 1996), "Congress specifically intended to eliminate the subjective inquiries into intent and the nature of payments that had plagued the courts in favor of a simpler, more objective test."

This objective test was necessary because state courts sometimes used the term "alimony" indiscriminately. For instance, in Hoover, an Ohio court awarded Mrs. Hoover "alimony as division of equity in the amount of $410,000," (which was later increased to $521,640). Id. at 844. The state court ordered Mr. Hoover to pay Mrs. Hoover $3,000 per month until the amount was paid in full, and granted Mrs. Hoover a lien on some of Mr. Hoover's shares as security for the alimony. Id. Even though the state court used the term "alimony," the Sixth Circuit found that the payments were actually part of a property settlement and therefore Mr. Hoover was not permitted to claim a deduction for alimony payments under I.R.C. § 215. Id. at 847-48.

Under section 71(b)(1), a payment or payments can only be considered "alimony" when: (A) the payment is received by (or on behalf of) a spouse under a divorce or separation instrument; (B) the instrument does not designate the tax treatment of the payments; (C) the parties are not members of the same household if legally separated by a divorce or separate maintenance decree; and (D) the payor spouse is not liable to continue making the payments after the death of the payee spouse, nor must the payor spouse make a

9

substitute payment.  I.R.C. § 71(b)(1)(A)-(D).

The parties in this case agree that the payments in question meet the requirements of section 71(b)(1)(B), and that section 71(b)(1)(C) is not applicable because Mr. and Ms. Kean were not legally separated under a decree of divorce or separate maintenance.  The dispute is whether the payments meet the requirements of sections 71(b)(1)(A) and (D).

## A. The Payments Were Received by Ms. Kean

Under section 71(b)(1)(A), a payment will only be considered alimony when "such payment is received by (or on behalf of) a spouse under a divorce or separation agreement." I.R.C. § 71(b)(1)(A).  According to Ms. Keen, the payments in question were not "received" because, (1) the payments were deposited into a joint checking account (shared by Mr. Kean), and (2) the court placed certain conditions on the use of the funds in the account.  We find these arguments unpersuasive.

First, Ms. Kean had unfettered access to the funds. The divorce court required Mr. Kean to deposit $6,000 each month into the account and allowed Ms. Kean "unlimited access to the parties' joint checking account and checkbook to maintain herself, the children and the household." (Appellant App. at A-57).  If there was any doubt as to who controlled the money, the divorce court settled that matter in the March 5, 1993 Order which stated that Ms. Kean was to have

10

exclusive use of the payments..[2]

Ms. Kean's alternate argument is without merit in light of the Supreme Court's opinion in Commissioner v. Lester, 366 U.S. 299, 303-04 (1961)(overruled by I.R.C. § 71(c)(2)) which remains persuasive even though the ultimate holding was overruled by statute, Preston v. Commissioner, 209 F.3d 1281, 1284 (11th Cir. 2000). In Lester, the Court examined a statute that preceded section 71 and explained that slight restrictions on the use of payments should not color a court's overall analysis of the nature of the payments. Lester, 366 U.S. at 304. "Under the type of agreement here, the wife is free to spend the monies paid under the agreement as she sees fit. 'The power to dispose of income is the equivalent of ownership of it.'" Id. (quoting Helvering v. Horst, 311 U.S. 112, 118 (1940)). Although the divorce court offered broad guidance as to how the money was to be spent, Ms. Kean's use of the money was sufficiently unrestricted. Because Ms. Kean's access and control of the money was unfettered, we have no trouble concluding that she "received" the funds as required by section 71(b)(1)(A).

## B. Mr. Kean had No Liability to Make Payments Upon the Death of Ms. Kean

---

[2] If Mr. Kean had interfered with some of the money prior to the March 5, 1993 Order, we might conclude that Ms. Kean did not receive those funds. However, Ms. Kean made no such argument, but instead stipulated that Mr. Kean made payments to her in the amount of $54,000 in 1992 and $57,388 in 1993.

Ms. Kean also claims that Mr. Kean's payments cannot be considered alimony because they do not meet the requirements of section 71(b)(1)(D), which states that a payment can only be considered alimony when "there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse." I.R.C. § 71(b)(1)(D). According to Ms. Kean, Mr. Kean would have been required to continue making the *pendente lite* payments even if she had died, and therefore section 71(b)(1)(D) is not satisfied.

The *pendente lite* orders directing Mr. Kean to make payments to Ms. Kean did not specify whether Mr. Kean's responsibility to make payments would terminate upon Ms. Kean's death. When the order does not expressly state that the payments cease upon the death of the payee, we must examine the state law to determine whether the death of the recipient terminates the payment order. I.R.S. Notice 87-9, 1987-1 C.B. 421 ("The termination of liability need not . . . be expressly stated in the instrument [if], for example, the termination would occur by operation of State law.").

A support order issued *pendente lite* in a New Jersey divorce proceeding does not survive the death of the payee. Wilson v. Wilson, 181 A. 257, 260 (N.J. Ch. 1935) ("The termination of the suit rendered the order for maintenance therein prospectively inoperative, so that no installments accrued thereon after such termination."). See also Sutphen v. Sutphen, 142 A. 817, 817 (N.J. Ch. 1928) ("The right to

12

alimony, if it exists, is a purely personal right, at least prior to decree or determination. . . . It follows that by her death pending suit the cause of action abates and (in the absence of statutory provision -- and none such exists), cannot be revived by or in favor of her personal representative or legatee.") *overruled in part by* <u>Williams v. Williams</u>, 281 A.2d 273, 275 (N.J. 1971). However, Ms. Kean argues that because the payments were unallocated support payments for both herself *and her children*, Mr. Kean would have been obliged to continue making the payments after her death.

To support her position, Ms. Kean suggests that we should follow the Tenth Circuit's opinion in <u>Lovejoy v. Commissioner</u>, 293 F.3d 1208, 1211-12 (10th Cir. 2002), which held that, under Colorado law, support payments made during divorce proceedings do not fit the definition of "alimony" as set out in I.R.C. § 71(b). Ms. Kean also directs our attention to the Tax Court's holding in <u>Gonzales v. Commissioner</u>, 78 T.C.M. (CCH) 527 (1999) which held, in a case similar to the one before us, that New Jersey law would not have relieved the payor spouse of an obligation to pay family support if the payee spouse died before the entry of judgment. Having considered both cases, we believe that the decisions rely too heavily on the intricacies of family law and fail to take into account the overall purpose of section 71. Furthermore, these cases ignore the interplay between section 71(b) and section 71(c) and their importance in distinguishing between alimony, child support and property settlement payments for the purpose of tax treatment.

Section 71(b)(1)(D) must be examined in the context

13

of the rest of the section 71(b) requirements.  Accordingly, the question presented is whether the payor must continue to make payments *to or on behalf of the spouse*, as outlined in 71(b)(1)(A).  Although it may be true that Mr. Kean would still have had responsibilities to his children had Ms. Kean died, he would not have been required to make any payments to Ms. Kean or her estate, nor would he have made any payments on her behalf.  "Divorce proceedings abate with the death of one of the parties."  Carr v. Carr, 576 A.2d 872, 875 (N.J. 1990).  Consequently, Mr. Kean's responsibilities to his children, both financial and custodial, properly would have been determined by New Jersey family law (most likely in separate proceedings) and would not have arisen from the *pendente lite* order issued in the divorce proceedings.

A contrary decision would violate the intent of I.R.C. § 71(c).  Under section 71(c), child support payments may be separated out of alimony payments for tax purposes, but only if the amount intended for child support is sufficiently identifiable.  Under I.R.C. § 71(c)(1)-(2), payments are not considered alimony to the extent that the divorce or separation instrument *fixes* a sum of money as child support, or provides that the payments are reduced on the happening of an event related to the child, or at a time associated with such an event.[3]  Where support payments are unallocated, as in this

---

[3]  I.R.C. § 71(c) states:

> (c) Payments to support children.
>      (1) In general. Subsection (a) shall not apply to

14

case, the entire amount is attributable to the payee spouse's income.  Otherwise, we would be left with a situation in which the portion of the unallocated payment intended for the

---

that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse.

(2) Treatment of certain reductions related to contingencies involving child.  For purposes of paragraph (1), if any amount specified in the instrument will be reduced--

(A) on the happening of a contingency specified in the instrument relating to a child (such as attaining a specified age, marrying, dying, leaving school, or a similar contingency), or

(B) at a time which can clearly be associated with a contingency of a kind specified in subparagraph (A),

an amount equal to the amount of such reduction will be treated as an amount fixed as payable for the support of children of the payor spouse.

(3) Special rule where payment is less than amount specified in instrument. For purposes of this subsection, if any payment is less than the amount specified in the instrument, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.

15

support of the payee spouse would be taxable to the payor spouse.

This treatment of support payments is not accidental, and can benefit families going through a divorce. See N.J. Court Rules, 1969 R. 5:7-4(a) ("In awarding alimony, maintenance or child support, the court shall separate the amounts awarded for alimony or maintenance and the amounts awarded for child support, unless for good cause shown the court determines that the amounts should be unallocated.") By ordering the payor spouse to make an unallocated support payment taxable in full to the payee spouse, the couple may be able to shift a greater portion of their collective income into a lower tax bracket. Consequently, an unallocated payment order not only frees the parents from restrictive court instructions that dictate who pays for what, but may allow the parties to enjoy a tax benefit at a time when they face increased expenses as they establish independent homes. This advantage would be lost by taxing all unallocated payments to the payor spouse.

For the reasons set forth above, we affirm the decisions of the Tax Court in both cases.