**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-55

UNITED STATES TAX COURT

CARL RAISIG, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14698-11S.                    Filed July 11, 2013.

Carl Raisig, pro se.

Marissa J. Savit, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  The petition in this case was filed

pursuant to the provisions of section 7463 of the Internal Revenue Code in effect

when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated May 31, 2011 (notice), respondent determined a deficiency in petitioner's 2008 Federal income tax and imposed a section 6651(a)(1) addition to tax and a section 6662(a) accuracy-related penalty. The case is before the Court on respondent's motion for summary judgment. The issues for decision are: (1) whether petitioner is entitled to an alimony deduction in excess of the amount respondent allowed; (2) whether petitioner is liable for a section 6651(a)(1) addition to tax; and (3) whether petitioner is liable for a section 6662(a) accuracy-related penalty.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b);

<hr>

[1](...continued)
Code of 1986, as amended, in effect for the year at issue. Rule references are to the Tax Court Rules of Practice and Procedure.

Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. See Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

There are obvious disputes over material facts with respect to petitioner's liability for the section 6651(a)(1) addition to tax and the section 6662(a) accuracy-related penalty imposed in the notice. So much of respondent's motion as relates to these items will be denied. Because there are no factual disputes with respect to petitioner's entitlement to the alimony deduction here in dispute, and for the reasons discussed below, respondent is entitled to decision on that issue as a matter of law, and respondent's motion with respect to that issue will be granted. Petitioner resided in New York at the time the petition was filed.

## Undisputed Factual Background

Petitioner and Eileen Fisher (petitioner's former spouse) were married on August 24, 1974. On June 1, 2000, they separated pursuant to a written separation

agreement (separation agreement) and remained separated until their divorce on July 11, 2002.  They have three children, G.R., T.R., and E.R.[2]

The separation agreement awarded sole legal custody of the three children to petitioner's former spouse.  Pursuant to the separation agreement, petitioner was obligated to pay $1,026 biweekly to petitioner's former spouse "for support of the three (3) unemancipated issue of their marriage * * *.  Child support for each child shall cease upon the occurrence of an Emancipation Event as set forth herein."

The separation agreement further obligated petitioner to pay, for the benefit of his children, some or all of the following expenses:  (1) life insurance; (2) clothing; (3) medical expenses; and (4) child care, including summer camp and after-school activities.  With respect to the aforementioned expenses, the separation agreement provides:

ARTICLE VIII
SUPPORT AND MAINTENANCE OF THE WIFE AND CHILD

1. (a) * * * [T]he husband during his lifetime shall pay to the Wife, as and for support of the three (3) unemancipated issue of their marriage, the sum of FIVE HUNDRED THIRTEEN ($513.00) DOLLARS per week, which sum shall be paid to the Wife bi-weekly in the amount of $1,026.00.  Child support for each child shall cease upon the occurrence of an Emancipation Event as set forth herein.

* * * * * * *

[2]We refer to minor children by their initials.  See Rule 27(a)(3).

1. (e)  The husband agrees to provide a minimum life insurance policy of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS for the benefit of the infant issue of the marriage, such sum payable to the Wife as irrevocable trustee.

\*       \*       \*       \*       \*       \*       \*

(ii)  In the event the Husband fails to pay the premium on said insurance policy, then in that event the Husband shall be responsible to reimburse the Wife for said payments.  The monies due and owing the Wife for the payment of the aforementioned insurance premiums shall be considered as additional child support.

\*       \*       \*       \*       \*       \*       \*

4.  The Husband shall pay to the Wife the sum of TWO HUNDRED FIFTY ($250.00) DOLLARS on or before August 15th each year and on or before March 15th each year as a clothing allowance for T.R. and E.R.  Upon the emancipation of one child, said sum shall be reduced to ONE HUNDRED FIFTY ($150) DOLLARS to be paid twice a year.

\*       \*       \*       \*       \*       \*       \*

## ARTICLE X
## MEDICAL EXPENSES

The parties agree that the children's unreimbursed medical and dental expenses will be paid one-third (1/3) by the Wife and two-third (2/3) by the Husband.  The Husband agrees to maintain health insurance and major medical coverage for the infant children, until the emancipation of the children. \* \* \*

## ARTICLE XI
## CHILD CARE

\*       \*       \*       \*       \*       \*       \*

The Husband shall pay for 2/3 of summer camp expenses for E.R. and the Wife shall pay 1/3 of same.  The Husband's obligation shall not exceed SEVEN HUNDRED FIFTY ($750.00) DOLLARS unless otherwise agreed in writing.

\*       \*       \*       \*       \*       \*       \*

The Husband shall be responsible to pay for two thirds (2/3) of any after school activities and tutoring for E.R. and the Wife shall pay one third (1/3) of same. \* \* \*

On February 14, 2007, the Family Court of the State of New York issued an order modifying an order of support on consent (modifying order) reducing petitioner's biweekly child support obligation to $781.69, effective October 19, 2006, for the support of his child E.R. (biweekly child support payments). Pursuant to the modifying order, during 2008 petitioner made 26 biweekly child support payments effected through payroll deductions.  Also during 2008, petitioner made payments attributable to his children's life insurance premiums, clothing expenses, medical expenses, and child care expenses, including the costs of summer camp and after-school activities.

On his 2008 Federal income tax return, petitioner claimed a $26,801 alimony deduction. According to the notice, petitioner's alimony deduction is limited to $1,628.[3]

Discussion

It is well settled that deductions are a matter of legislative grace and that the taxpayer must establish entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In the case of an individual, section 215(a) "allow[s] as a deduction an amount equal to the alimony * * * payments paid during such individual's taxable year." The definition of "alimony", for purposes of section 215(a), is found in section 71. Sec. 215(b).

In general and as relevant here, section 71(b)(1) defines the term "alimony" as any cash payment if: (1) the payment is received by a spouse[4] under a divorce or separation instrument;[5] (2) the divorce or separation instrument does not state

---

[3]The record does not reveal how this amount was computed, except it appears that this is the amount of alimony income reported on the 2008 Federal income tax return of petitioner's former spouse.

[4]For purposes of sec. 71, the term "spouse" includes a former spouse. Sec. 71(d).

[5]The phrase "divorce or separation instrument" as used in sec. 71 includes

(continued...)

that the payment is neither includable in gross income nor allowable as a deduction; (3) the payor and payee spouses are not members of the same household when the payment is made; and (4) the payment obligation terminates at the death of the payee spouse and there is no liability to make either a cash or a property payment as a substitute for the payment after the death of the payee spouse.

Section 71(c)(1), however, provides that the term "alimony" as used in section 71(a) does not include "any payment which the terms of the divorce or separation instrument fix * * * as a sum which is payable for the support of children of the payor spouse." Further, section 71(c)(2) provides that if the amount of spousal support to be paid under a separation agreement or divorce decree is to be reduced either on the happening of a contingency specified in the agreement relating to a child (e.g., attaining a specified age or leaving for school), see sec. 71(c)(2)(A), or at a time that can clearly be associated with such a contingency, see sec. 71(c)(2)(B), an amount equal to the amount of the reduction will be treated as child support, sec. 71(c)(2)(A) and (B); Berry v. Commissioner, T.C. Memo. 2005-91.

---

[5](...continued)
the separation agreement and the modifying order. See sec. 71(b)(2).

The parties agree with respect to the principles just stated, but they disagree as to whether the portion of the alimony deduction disallowed in the notice fits within the definition of "alimony".  Petitioner takes the position that payments made pursuant to the separation agreement and/or the modifying order satisfy all of the requirements of section 71(b)(1), and therefore the payments constitute "alimony" within the meaning of sections 71 and 215.  According to petitioner, the alimony deduction here in dispute properly includes amounts for:  (1) unallocated amounts for the support and maintenance of his children and his former spouse; (2) life insurance for his children; (3) summer camp for his children; (4) his children's medical expenses, clothing allowance, and after-school activities; and (5) "credit for reduction in principal".[6]

Respondent disagrees.  According to respondent, petitioner is not entitled to an alimony deduction in excess of  $1,628 because (1) none of the payments fit within the definition of "alimony", see sec. 71(b)(1); and/or (2) all of the payments constitute child support within the meaning of section 71(c).

We consider each category of payment separately.

---

[6]This apparently relates to an amount paid on the mortgage on the marital residence.

Biweekly Child Support Payments

The modifying order states that petitioner's "basic child support obligation is $781.69 bi-weekly" for the support of his child E.R. The modifying order further states that petitioner and his former spouse "voluntarily stipulated to child support for the child payable by Carl Raisig to Eileen Raisig via the Support Collection Unit in the amount of $781.69 bi-weekly." In accordance with the modifying order, petitioner made 26 biweekly support payments during 2008.

The explicit language of the separation agreement and the modifying order lead to the inescapable conclusion that the biweekly payments constitute child support and not alimony. According to petitioner, however, Kean v. Commissioner, 407 F.3d 186, 192 (3d Cir. 2005) ("Where support payments are unallocated, as in this case, the entire amount is attributable to the payee spouse's income."), aff'g T.C. Memo. 2003-163, supplemented by T.C. Memo. 2003-275, allows for the avoidance of what would seem to be an inevitable result.[7] Relying upon Kean, petitioner argues that the biweekly support payments do not qualify as child support because the separation agreement does not explicitly fix the amount

---

[7]We have considered petitioner's other arguments and find them unpersuasive.

of child support and, therefore, the "unallocated" support payments must be alimony.  See sec. 71(c)(1).

In Kean v. Commissioner, 407 F.3d at 192, the U.S. Court of Appeals for the Third Circuit held that when the terms of a divorce or separation instrument do not fix a sum of money as child support, or provide that the payments are reduced on the happening of a contingency event related to the child or at a time related to such an event, the "support payments are unallocated" and "the entire amount is attributable to the payee spouse's income."

Petitioner's reliance upon Kean, of course, is misplaced.  The facts in this matter are readily distinguishable from those in Kean.  The Kean case addresses the situation where the support payments are unallocated as between the children and the spouse and no contingency exists with respect to an event related to the children that reduces the support payments.  Even a cursory reading of the separation agreement and the modifying order unambiguously demonstrates that these divorce instruments provide that the biweekly support payments are for the support of petitioner's child, E.R.  Furthermore, petitioner's obligation to make the biweekly support payments ceases "upon the occurrence of an Emancipation Event as set forth" in the separation agreement.  See sec. 71(c)(2).  It follows that the

biweekly support payments are child support under section 71(c)(1) and (2) and are not deductible as alimony.

Life Insurance Premiums

The separation agreement requires petitioner to provide life insurance for the benefit of his children.

In Sperling v. Commissioner, 726 F.2d 948, 954 (2d Cir. 1984), aff'g T.C. Memo. 1982-681, the Court of Appeals for the Second Circuit held that in order for premium payments on a life insurance policy to constitute income to an ex-wife (and accordingly be deductible by an ex-husband) "there must be (a) absolute ownership of the policy by the wife; and (b) an irrevocable designation of the wife as beneficiary." See Piel v. Commissioner, 340 F.2d 887, 890 (2d Cir. 1965) (holding that "ownership of the policies is necessary to support a deduction"), aff'g T.C. Memo. 1963-346; Hyde v. Commissioner, 301 F.2d 279 (2d Cir. 1962), aff'g 36 T.C. 507 (1961); Weil v. Commissioner, 240 F.2d 584 (2d Cir. 1957), aff'g in part, rev'g in part 23 T.C. 630 (1955) and 22 T.C. 612 (1954); see also Rev. Rul. 70-218, 1970-1 C.B. 19.

Neither prong of the two-point test enumerated in Sperling is satisfied here. First, petitioner's former spouse was not the absolute owner of the life insurance policy. Rather, pursuant to the separation agreement she was the irrevocable

trustee of the policy. Second, there was no irrevocable designation of petitioner's former spouse as beneficiary of the life insurance policy. The separation agreement designated petitioner's "infant issue of the marriage" as the beneficiaries. Accordingly, the life insurance premiums paid in 2008 are not deductible as alimony.

Summer Camp, Medical Expenses, Clothing Allowance, and After-School Activities

The separation agreement required petitioner to make payments to petitioner's former spouse in 2008 for: (1) summer camp expenses for E.R., (2) unreimbursed medical and dental expenses for his children, (3) a clothing stipend of $250[8] paid twice a year for T.R. and E.R., and (4) after-school activities and tutoring for E.R.

Petitioner, again relying Kean v. Commissioner, 407 F.3d at 192, argues that: (1) because the separation agreement does not explicitly fix the amount of child support for the aforementioned expenses, payment of those expenses constitutes alimony, and (2) the payments can be used "to pay * * * [petitioner's] ex-wife's debts" and therefore cannot be considered child support. Again, respondent disagrees, and so do we.

---

[8]Upon the emancipation of one child, the $250 clothing stipend shall be reduced to $150.

First, the separation agreement provides a fixed payment, either in terms of an amount of money or a part of the payment, for each of the aforementioned expenses for the support of petitioner's child or children. See sec. 71(c)(1). Second, with respect to clothing and medical expenses the separation agreement contains explicit contingencies which, if satisfied, reduce petitioner's requirement to make related payments. See sec. 71(c)(2). The existence of the contingencies triggers application of section 71(c)(1), which requires the payments made for clothing and medical expenses be treated as child support. Accordingly, payments made for the aforementioned expenses do not constitute alimony within the meaning of section 71 or 215.

Reduction in Principal

Petitioner claims that he made a $3,132 payment for "credits for reduction in principal" in 2008 and that the payment is deductible as alimony.

As noted, section 71(b)(1) defines the term "alimony" to include, among other requirements, any cash payment if the payment is received by a spouse under a divorce instrument. Nothing in the record suggests that petitioner was obligated to make this payment pursuant to the separation agreement, the modifying order, or any other document that would fit within the definition of a divorce instrument. That being so, for our purposes we treat this payment as voluntary and therefore

not contemplated within the definition of alimony.  <u>See</u> sec. 71(b)(1)(A); <u>Taylor v. Commissioner</u>, 55 T.C. 1134 (1971).

Accordingly, petitioner is not entitled to a deduction for alimony payments claimed on his 2008 return to the extent the payments exceed $1,628.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.