389 So.2d 327 (1980)
Budagail S. KIRCHMAN, Appellant,
v.
Kenneth P. KIRCHMAN, Appellee.
No. 78-2410/T4-281.
District Court of Appeal of Florida, Fifth District.
October 22, 1980.
*328 Jack B. Nichols and Harold L. Downing of Nichols & Associates, P.A., Orlando, for appellant.
J. Cheney Mason and Donald A. Lykkebak, Orlando, for appellee.
DAUKSCH, Chief Judge.
This is an appeal from a judgment in a marriage dissolution action.
The first point on appeal challenges the method by which the trial court dealt with a major asset of the parties. In examining the transcript of the findings of the trial court and comparing those declarations with the judgment, we find some difficulty in determining exactly how the trial court meant to treat the capital stock of Florida Software Services, Inc., which stock was titled in the husband's name alone. The appellant claimed a special equity in a portion of the capital stock and the court specifically found no special equity. However, the court did make the statement: "I think it would be an absolute catastrophe and a sin for this court to permit Mrs. Kirchman to have any financial interest in the company after this case was over." There are also indications from the record that the *329 trial judge felt that Mrs. Kirchman was entitled to take from her husband a portion of his assets to equalize the assets of the parties upon dissolution. This is reflected by the statements of the trial judge:
Now, I obviously cannot sit here and tell you that I state for sure exactly what the value of that company is. I am in the posture of making a very educated guess solely upon the testimony that's been presented before me here. The value suggested was anywhere between two hundred and fifty thousand dollars, all the way up to two million five hundred thousand dollars. That's quite a spread. I was able to go ahead and come up with a figure and feel fairly confident with it because I knew in the back of my mind that in the event I was wrong, if I did set what the value of the company was specifically at this time, you know, March the 2nd, nineteen hundred and seventy-eight, that if the company went under on December the 30th of nineteen hundred and seventy-eight and the value turned out to be three hundred percent less than what I said it was, whatever, that a modification petition could come in and we could go ahead and make the necessary adjustments. Also, I knew that in the event that the value that I set was one half of what it really was and it was twice the amount, and if subsequently proved that the value significantly increased, and there was still corresponding need, and that type of thing, that I could go ahead and make an adjustment. So, knowing that, I didn't feel pushed really to have to come up with a very difficult task of really nailing down what the exact figure was, but I did the best I could with all the testimony that came in. And, in my opinion, that the value of the company as of today is seven hundred fifty thousand dollars. So, I've set that value as that side of the asset. I've put that on the husband's side of the ledger which means now he's starting off with seven hundred and fifty thousand dollars.
* * * * * *
Now, getting down to the alimony situation. This was the most difficult area to work in. It's obvious to me I've got to supply-in order to try to offset the tremendous assets I'm giving to the husband-the value of those stocks. I've got to try to go ahead and set out periodic alimony for the wife and, yet, I'm looking at a depreciated cash flow situation as far as the husband goes... . I've got to go ahead and make it as easy as possible during this transition period.
I believe the wife is going to have to eventually get out and work. It's obvious that she's been sitting back praying for a miracle, and that miracle hasn't been forthcoming, and I can't perform any miracles. So, I need for her to have, you know, something to get by on. Initially a little bit more because now's the critical time as far as she goes. And, as the months and years go by, reduce it so that her need won't be as great.
In the judgment the trial court then awarded alimony from the husband to the wife in the amount of $2,500.00 per month for six months; $2,000.00 for the next thirty months; $1,500.00 for the next twenty-four months and $600.00 for the next one hundred eighty months.
While it appears the trial court was attempting to do equity between the parties to give the wife a portion of the husband's assets, it becomes more apparent upon deeper consideration that equity was not done. Although the attempt to balance the assets was done through periodic alimony payments, it was not done in any method heretofore recognized proper under the law.
There are three recognized types of alimony. The first is permanent periodic alimony which is used generally to provide support from a financially able former spouse to a financially needy former spouse. The second is rehabilitative alimony which is from a financially able former spouse to a financially needy former spouse to assist the needy in adjusting to a new life and to aid in obtaining new skills, education and/or other rehabilitation. Rehabilitative alimony is for a set period of time and *330 ofttimes for a specific purpose such as obtaining a degree or a skill and a return to the labor marketplace. The last recognized form of alimony is called lump-sum alimony and that is generally recognized as an alternative to one of the two foregoing types of alimony and is not for the recognition of a special equity to the receiving former spouse but has been used to balance assets acquired during the marriage between the parties. Our Supreme Court has given us a rather generalized description of the forms of alimony, equity and special equity in the recent decision of Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). The various types of alimony can be used in combination to provide for the needy spouse after dissolution. Lee v. Lee, 309 So.2d 26 (Fla. 2d DCA 1975). Alimony is not to be used to pay off a debt from one spouse to another. Spears v. Spears, 148 So.2d 564 (Fla. 1st DCA), aff'd mem., 156 So.2d 912 (Fla.App. 1963). See also Black v. Black, 247 So.2d 775 (Fla. 3d DCA 1971).
Here, the trial judge referred to his award as "periodic alimony" in the transcript and denominated it merely "alimony" in the judgment. We do not know if he means periodic rehabilitative alimony, periodic permanent alimony or lump-sum alimony paid in periodic installments. Because of the nature of the award, the schedule of declining amounts terminating at a fixed date, it is not periodic permanent alimony because that kind of alimony continues throughout the unremarried life of the recipient and cannot be terminated unless there is a showing, in the future, of no longer a need on the part of the recipient or there is a showing of a lack of ability on the part of the donor. Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976). This award cannot be deemed rehabilitative alimony because there is no specific finding by the trial court regarding the need for rehabilitation or a plan to do so and thus is not tied to any specific rehabilitative purpose. Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974), cert. denied, 312 So.2d 737 (Fla. 1975). See Melvin v. Melvin, 265 So.2d 414 (Fla. 3d DCA 1972) (alimony must be either rehabilitative or permanent). This award is rather like lump sum alimony paid periodically, but again, we find nothing in the record from the many declarations of the trial judge to indicate that is what he had in mind.
Rather than following the legally recognized forms of property division, either by way of recognizing a special equity or a lump-sum alimony award, it seems the trial judge has hybridized and tried to form a new type of alimony which he simply calls "periodic alimony." It can be quickly seen however that this is not an equitable award especially to the appellant. If we assume this is an award of permanent alimony for support, then it will terminate upon the death or remarriage of the wife. If she wants the income then she is prevented from remarrying. Additionally, her estate would not receive the money after her death. So, if the trial judge meant to balance the assets between the parties, then the death or remarriage would thwart that intent. The same applies in this case if he meant it to be rehabilitative alimony. Additionally, if this award was meant to balance the assets or equalize the assets between the parties, the trial judge should have taken into account the tax consequences of the award, which the parties would have done had they been able to devise their own property settlement agreement. From the periodic payments the wife will pay income tax and the husband will receive a deduction from his tax payments. The trial court specifically found no special equity in the shares of stock, yet he referred to the fact that these parties "had a partnership, we had a marital partnership which was also a business partnership, and you all are where you are today because of each other... ." Also, the trial judge found, "I do feel each of you should come out of this relationship with approximately, approximately as far as where the existing assets go, the same, and close as we can." The tax man will prevent that equalization of assets in the formula used here. It was at this point the trial judge made the earlier referred to statement about it being a catastrophe and a sin to permit Mrs. Kirchman *331 to have any financial interest in the company.
Mrs. Kirchman either has a special equity in the shares of stock or she does not. The trial judge needs to review this case and clarify his findings based on the record and, if it is his determination that she has acquired a special equity, then he should so find and legally recognize, in some manner but not necessarily a transfer of stock. It is very difficult for us to review this case and determine what the findings of the trial court are because they are conflicting in many instances.
Additionally, the judgment itself is lengthy and not limited to the resolution of legal rights and responsibilities; much of it contains legally unenforceable matters.
The award of the marital home as lump sum alimony to the wife is affirmed. Point II in the appellant's brief argued that "it was reversible error per se for the trial court to base its verdict upon its own beliefs and personal ideologies rather than upon the applicable law and the facts presented at trial." The appellant has not pointed to any specific result of the ideological determinations which amounted to error in the legal sense, except as set out here in regard to the alimony. The appellant has also challenged the failure of the trial court to award permanent periodic alimony to the wife. Because we are reversing the alimony portion of the judgment, we shall not at this point speak to the issue of permanent alimony.
As to Point IV, we find no error in regard to the award of attorney's fees because that matter is within the discretion of the trial judge. Canakaris.
This cause is remanded for entry of a proper judgment dealing specifically with the issues of alimony and special equity in the shares of stock. Should the evidence support it and the trial judge in his sound discretion deems it proper, a distribution of the assets of the parties can be effected through the use of lump-sum alimony paid periodically. Canakaris. Upon remand the trial court may take such additional evidence as is deemed necessary, or may base its judgment upon the evidence previously admitted.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
ORFINGER, J., and EVANS, VERNON W., Jr., Associate Judge, concur.