T.C. Memo. 2012-122

UNITED STATES TAX COURT

DANIEL W. ROOD AND REBECCA ROOD, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20817-09.                    Filed April 25, 2012.

A. Brian Phillips, for petitioners.

Randall B. Childs, for respondent.

MEMORANDUM OPINION

GOEKE, Judge: This matter is before the Court on respondent's motion for

summary judgment pursuant to Rule 121.[1]  Respondent contends that no genuine

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code in effect for the year in issue, and all Rule references are to the Tax Court

(continued...)

issue exists as to any material fact and that the determination to deny petitioners' deduction for alimony payments should be upheld. The issue for decision is whether certain payments by petitioners qualified as deductible alimony in accordance with section 71(b)(1).

For the reasons stated below, we shall grant respondent's motion for summary judgment.

## Background

At the time the petition was filed, petitioners resided in Orlando, Florida. On June 3, 1995, Daniel Rood married Ida Wozniak in Orlando, Florida. No children were born of the marriage. In 2002 Mr. Rood and Ms. Wozniak filed a dissolution of marriage action in Orange County, Florida. During the course of their divorce proceedings Mr. Rood and Ms. Wozniak entered into negotiations regarding settlement. As part of these negotiations, Ms. Wozniak's attorney sent a letter dated December 17, 2002, to Mr. Rood's attorney proposing a settlement offer, including a provision whereby--

> The Husband shall pay to the Wife the sum of $5,000.00 a month for as long as she continues to be enrolled at Rollins College to complete her degree as planned, but no longer than a period of five (5) years.

---

[1](...continued)
Rules of Practice and Procedure.

Thereafter, Mr. Rood's attorney sent a letter to Ms. Wozniak's attorney stating--

> The following items have been proposed by my client [Mr. Rood] as also being agreeable to your client [Ms. Wozniak], revised as follows: * * * This amount of $5,000.00 per month for as long as the Wife continues to be enrolled at Rollins College to complete her degree as planned, but no longer than a period of sixty (60) months beginning thirty days after the entry of the Final Judgment, by way of income deduction order, is non-modifiable.

On February 4, 2003, Mr. Rood and Ms. Wozniak entered into a marital property settlement agreement (MSA). Pursuant to the MSA Mr. Rood received the marital residence in exchange for a $100,000 payment to Ms. Wozniak. Furthermore, Mr. Rood had to pay Ms. Wozniak $100,000 "toward equitable distribution of the marital assets." Moreover, paragraph 21 of the MSA states--

> The Respondent/Husband shall pay non-modifiable lump sum alimony in the amount of $300,000.00 to the Petitioner/Wife at the rate of $5,000.00 per month for a period of 60 months, by Income Deduction Order, beginning thirty days after the entry of the Final Judgment.

The divorce between Mr. Rood and Ms. Wozniak became final on February 18, 2003, upon a final judgment of dissolution of marriage (final judgment) issued by the Ninth Judicial Circuit Court for Orange County, Florida (county court). Paragraph 3 of the final judgment incorporates the MSA, and paragraph 7 of the final judgment states--

The Husband shall pay to the Wife as non-modifiable lump sum alimony the sum of THREE HUNDRED THOUSAND ($300,000.00) AND NO/100 DOLLARS payable monthly in the amount of FIVE THOUSAND DOLLARS ($5,000) AND NO/100 DOLLARS beginning March 15, 2003, and continuing each month thereafter for sixty (60) months until paid in full. The said alimony shall be paid by Income Deduction Order to the Wife.

Also included in the final judgment was a provision stating that the county court "retains jurisdiction of the parties hereto and the subject matter hereof for the purpose of enforcement of obligations as between the parties." The county court also issued an income deduction order to Mr. Rood's employer. The income deduction order instructed Mr. Rood's employer to withhold amounts from Mr. Rood's paycheck and pay to the Florida Department of Revenue "[n]on-modifiable lump sum alimony in the amount of $300,000.00 payable at the rate of $5,000.00 per month for sixty (60) months beginning March 15, 2003 until February 15, 2008 or until notified that said amount has been paid in full".

Mr. Rood subsequently married Rebecca Rood. Petitioners filed a joint income tax return for the 2006 tax year claiming an alimony deduction of $60,063 for payments made to Ms. Wozniak during 2006. Respondent examined petitioners' 2006 income tax return and determined that the payments were not deductible. Therefore, respondent determined a $21,442 deficiency in petitioners'

income tax. Petitioners timely filed a petition with this Court, and respondent filed a motion for summary judgment.

## Discussion

### I. Summary Judgment

Summary judgment is designed to expedite litigation and to avoid unnecessary and expensive trials. Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). A motion for summary judgment may be granted where the pleadings and other materials show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The burden is on the moving party to demonstrate that no genuine issue as to any material fact remains and that he is entitled to judgment as a matter of law. FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74-75 (2001). In all cases, the evidence is viewed in the light most favorable to the nonmoving party. Bond v. Commissioner, 100 T.C. 32, 36 (1993).

However, the nonmoving party is required "to go beyond the pleadings and by * * * [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); see also Rauenhorst

v. Commissioner, 119 T.C. 157, 175 (2002); FPL Grp., Inc. & Subs. v. Commissioner, 115 T.C. 554, 560 (2000).

Petitioners filed an affidavit and a response to respondent's motion for summary judgment. In petitioners' response, they contend that the provisions in the divorce decree, MSA, and income deduction order providing for "non-modifiable lump sum alimony" should be interpreted as providing for "rehabilitative alimony" that would terminate upon Ms. Wozniak's death. Petitioners argue that a critical factor in determining whether a payment is deductible alimony is whether the payment is modifiable. Even though the divorce decree explicitly states that the payments are nonmodifiable, petitioners argue that the payments were in fact modifiable because the county court retained jurisdiction to enforce the MSA, and the MSA could be modified by an agreement by both the parties.

Moreover, petitioners assert that Florida law considers the intent of the parties in determining the character of payments labeled as alimony, and the settlement negotiation letters between Mr. Rood and Ms. Wozniak leading up to the final judgment demonstrate that the payments should be classified as deductible rehabilitative alimony that would terminate upon Ms. Wozniak's death. Petitioners urge us to consider the settlement negotiation letters in determining

the intent of the parties because they argue the Florida parol evidence rule requires examination of extrinsic evidence.

II.  History of Alimony Payment Deductions Under Section 71

Before 1984 section 71 required courts to consider a number of factors to determine whether certain transfers of money would be treated as alimony for Federal income tax purposes.  Hoover v. Commissioner, 102 F.3d 842, 844 (6th Cir. 1996), aff'g T.C. Memo. 1995-183.  Whether payments represented alimony or a property settlement was a question of intent.  Id. at 845.  Intent was to be ascertained from the agreement itself and from the surrounding facts and circumstances.  Id.

Congress amended section 71 in the Deficit Reduction Act of 1984, Pub. L. No. 98-369, sec. 422, 98 Stat. at 795, to eliminate the subjective inquiries into the intent and the nature of payments that had plagued the courts in favor of a simpler, more objective test.  See Baker v. Commissioner, T.C. Memo. 2000-164 (citing Hoover v. Commissioner, 102 F.3d. at 845); H.R. Rept. No. 98-432, Part II, at 1495 (1984), 1984 U.S.C.C.A.N. 697, 1137.  The objective test was necessary because State courts sometimes used the term "alimony" indiscriminately.  Kean v. Commissioner, 407 F.3d 186, 190 (3d Cir. 2005), aff'g T.C. Memo. 2005-575. Congress eliminated any consideration of intent in determining the deductibility of a

payment as alimony in favor of a more straightforward, objective test that rests entirely on the fulfillment of the explicit requirements set forth in section 71. Okerson v. Commissioner, 123 T.C. 258, 264-265 (2004) (citing Hoover v. Commissioner, 102 F.3d. at 845); Baker v. Commissioner, T.C. Memo. 2000-164; Nelson v. Commissioner, T.C. Memo. 1998-268; see also Rosenthal v. Commissioner, T.C. Memo. 1995-603 ("Whether or not the parties intended for the payments to be deductible to petitioner, we must focus on the legal effect of the agreement in determining whether the payments meet the criteria under section 71.").

III. Deductible Alimony Payments for Federal Income Tax Purposes

Pursuant to section 215(a), there shall be allowed as a deduction an amount equal to the alimony payments paid during an individual's taxable year. For purposes of section 215, the term "alimony" means any alimony (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71. Sec. 215(b).

Section 71(b)(1) defines alimony as any payment in cash if--

    (A) such payment is received by (or on behalf of) a spouse
under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

If a payment satisfies all of these factors, then the payment is alimony; if it fails to satisfy any one of these factors, then the payment is not alimony. Jaffe v. Commissioner, T.C. Memo. 1999-196. In this case, that subparagraphs (A), (B), and (C) are all satisfied is not in dispute. The issue before us is whether petitioners' payments to Ms. Wozniak satisfy subparagraph (D) of section 71(b)(1).

In prior cases considering the same question, the courts have applied the following sequential approach: (1) the court first looks for an unambiguous termination provision in the divorce decree; (2) if there is no unambiguous termination provision, then the court looks to whether the payments would terminate at the payee's death by operation of State law; and (3) if State law is unclear, the court will look solely to the divorce decree to determine whether the

payments would terminate at the payee's death.  See Kean v. Commissioner, 407 F.3d at 191; Fithian v. United States, 45 Fed. Appx. 700, 701 (9th Cir. 2002); Lovejoy v. Commissioner, 293 F.3d 1208, 1212-1213 (10th Cir. 2002), aff'g T.C. Memo. 1999-293; Hoover v. Commissioner, 102 F.3d at 847-848; Leventhal v. Commissioner, T.C. Memo. 2000-92.

While we will consider State law when there is no unambiguous termination provision in the divorce decree, we will not engage in the very sort of subjective inquiry that had prompted the 1984 revision of section 71.  Hoover v. Commissioner, 102 F.3d at 846.  Therefore, when State law is ambiguous as to the termination of payments upon the death of the payee, we will not engage in complex, subjective inquiries under State law; rather, we will read the divorce instrument and make our own determination based on the language of the document. Id.; see also Fithian, 45 Fed. Appx. at 701.

In this case, both the MSA and final judgment provide that Mr. Rood was to make "non-modifiable lump sum alimony" payments to Ms. Wozniak.  Neither document makes any reference to whether the obligation to make the payments would terminate upon the death of Ms. Wozniak.  Because the divorce documents are silent as to whether the obligation to make the payments would terminate upon Ms. Wozniak's death, we turn to Florida law to answer that question.

In a dissolution of marriage action, the Florida trial court is vested with broad discretion to achieve equity when dividing property between the parties and when granting alimony. Estate of Gary v. Commissioner, T.C. Memo. 1991-38 (citing Kaylor v. Kaylor, 466 So. 2d 1253, 1254 (Fla. Dist. Ct. App. 1985)). Florida recognized three types of alimony in 2003--permanent periodic, rehabilitative, and lump-sum alimony; the trial court may award alimony in any combination thereof. Fla. Stat. Ann. sec. 61.08(1) (West 2006); Kirchman v. Kirchman, 389 So. 2d 327, 329-330 (Fla. Dist. Ct. App. 1980). Permanent alimony is an allowance for the support and maintenance of a spouse during his or her lifetime. Cann v. Cann, 334 So. 2d 325, 329 (Fla. Dist. Ct. App. 1976). The obligation for periodic alimony afforded by a final divorce decree terminates upon the death of the payee spouse. See In re Estate of Freeland, 182 So. 2d 425, 426 (Fla. 1965); Van Boven v. First Nat'l Bank in Palm Beach, 240 So. 2d 329, 332 (Fla. Dist. Ct. App. 1970).

Rehabilitative alimony has been defined as "alimony paid for the purpose of rehabilitating the spouse to whom it is awarded, such as, financially supporting an ill spouse until health is restored, or financially supporting a spouse until he or she can be trained for employment, or in some circumstances, until the spouse has a

reasonable time to recover from the trauma of the dissolution." Cann v. Cann, 334 So. 2d at 329.

Furthermore, the test for determining whether alimony provisions are nonmodifiable lump-sum alimony is as follows--

> A lump-sum alimony award discharges the payor from further liability for the recipient party's support. An award of lump-sum alimony vests in the recipient at the time of the final decree of dissolution and is not subject to defeasance or modification. Lump-sum alimony is essentially payment of a definite sum and is in the nature of a final property settlement; hence, an award of lump-sum alimony creates a vested right which survives death and is not terminable on the recipient party's remarriage. [Filipov v. Filipov, 717 So. 2d 1082, 1084 (Fla. Dist. Ct. App. 1998).]

See Canakaris v. Canakaris, 382 So. 2d 1197, 1201 (Fla. 1980); Newsome v. Newsome, 456 So. 2d 520, 521-522 (Fla. Dist. Ct. App. 1984); Cann v. Cann, 334 So. 2d at 328. Although an existing vested interest is not as a general matter necessary for an award of lump-sum alimony, the fact of granting a lump-sum award in the final judgment itself actually creates a vested right in the receiving party which is neither terminable upon a spouse's remarriage or death nor subject to modification. Hannon v. Hannon, 740 So. 2d 1181, 1185 (Fla. Dist. Ct. App. 1999) (citing Canakaris v. Canakaris, 382 So. 2d at 1201). Thus, in awarding lump-sum alimony, the court is effectually deciding that the particular amount awarded should not be modified; instead it should be made absolute--i.e., placed beyond

the powers of the trial judge to change it. <u>Id.</u> Where a decree awards an allowance in gross, even though it is made payable in installments, the right becomes vested in the payee, and the obligation of the payor has every element of finality. <u>Id.</u> at 1186.

Petitioners invite us to consider extrinsic evidence in determining the nature of the payments. However, the 1984 congressional amendments to section 71 as well as our judicial precedents make clear that we should not engage in subjective inquiries in determining whether the obligation to make payments under a divorce decree would terminate upon the death of the payee spouse. The intent of the parties is irrelevant in determining whether such an obligation would terminate at death. Therefore, we do not consider the settlement negotiation letters.

Florida law is clear that the obligation to pay lump-sum alimony granted in a divorce decree does not terminate upon the death of the payee spouse. The MSA, the final judgment, and the income deduction order all order Mr. Rood to pay nonmodifiable lump-sum alimony to Ms. Wozniak. Moreover, petitioners' payments in this case cannot be rehabilitative alimony because there is no specific finding by the trial court regarding the need for rehabilitation or a plan to do so and thus the payments are "not tied to any specific rehabilitative purpose." <u>Kirchman v. Kirchman</u>, 389 So. 2d at 330. The payments were for the sum of $300,000 at the

rate of $5,000 per month until paid in full. Accordingly, we find that the payments were for a definite sum and in the nature of a final property settlement and therefore were lump-sum alimony payments under Florida law--the payments would not terminate upon the death of Ms. Wozniak and are therefore nondeductible.

Petitioners cite Filipov v. Filipov, 717 So. 2d at 1082, Newsome v. Newsome, 456 So. 2d at 522, and Canakaris v. Canakaris, 382 So. 2d at 1201, for the proposition that the nature of the payments should be determined by whether the final judgment is modifiable. However, in Canakaris, the court merely indicated that it may expressly retain jurisdiction to terminate lump-sum alimony installment payments upon the death of a spouse when the parties agree to such a provision in a property settlement agreement. In this case, the parties agreed that the lump-sum alimony payments were "nonmodifiable". Moreover, in Filipov and Newsome, the courts were deciding whether payments were periodic alimony or lump-sum alimony when the payments were vaguely defined in the divorce documents. In this case, all three agreements state that the payments were "nonmodifiable lump sum alimony". Petitioners' arguments to the contrary are rejected.

Finally, even if Florida law was unclear concerning whether the payments at issue were lump-sum alimony, when State law is ambiguous, we look only to the express language in the divorce documents to determine whether the payments would terminate upon the death of the payee. Looking only to the divorce documents, we find that petitioners' payments qualified as lump-sum alimony and the obligation to pay them would not terminate upon the death of Ms. Wozniak.

IV. Conclusion

Petitioners have failed to designate any specific facts in dispute that would indicate that there is a genuine issue for trial. Therefore, we conclude that there is no issue as to any material fact and that a decision may be rendered as a matter of law. Under Florida law, the payments at issue were made pursuant to an obligation to pay lump-sum alimony. Florida law is clear that the obligation to pay lump-sum alimony does not terminate upon the death of the payee spouse. Therefore, petitioners' $5,000 monthly payments in 2006 are not deductible alimony for purposes of section 71.

To reflect the foregoing,

                                        An appropriate order and
                                        decision will be entered.