T.C. Memo. 2015-163

UNITED STATES TAX COURT

ESTHER P. CRABTREE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19261-13.                    Filed August 17, 2015.

Steven R. Director, for petitioner.

Thomas R. Thomas, Nancy B. Romano, and Jason M. Kuratnick, for

respondent.

MEMORANDUM OPINION

LAUBER, Judge:  The Internal Revenue Service (IRS or respondent)

determined a $12,854 deficiency in petitioner's 2010 Federal income tax and a

[*2] $2,571 penalty under section 6662(a).[1]  The issues for decision are whether payments petitioner received from her ex-husband constitute alimony and whether petitioner is liable for the accuracy-related penalty.  We decide both issues in petitioner's favor.

## Background

This case was submitted fully stipulated under Rule 122.  The stipulation of facts, consisting of 11 paragraphs and three exhibits, is incorporated by this reference.  Petitioner resided in Pennsylvania when she petitioned this Court.

Petitioner (the former Mrs. Girard) was married to Donald Anthony Girard, M.D. (Dr. Girard), until late 2006.  On December 5, 2006, petitioner and Dr. Girard entered into an agreement incident to their divorce (Divorce Agreement).  Two days later, the Delaware Family Court, in an uncontested proceeding, entered the Divorce Agreement as an order.  This order states that it was issued "[w]ithout a hearing, without passing upon the substance, form, and/or fairness of the agreement, and without knowledge by the Court of the facts and circumstances concerning the negotiations of the parties."

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[*3]** The Divorce Agreement, which is drafted informally, contains 13 paragraphs. Paragraph six provides: "Dr. Girard will continue to tender unallocated alimony/child support in the monthly sum of $5,232.00 for a continued 8 year period with the provision as long as Mrs. Girard should not remarry or cohabitate." The Divorce Agreement is silent as to whether the payment obligation created by this paragraph would terminate if petitioner or Dr. Girard should die before eight years elapsed.

The remaining paragraphs of the Divorce Agreement outline the division of property constituting the marital estate and the payment obligations assumed by each party. Paragraph seven provides that Dr. Girard "will be solely responsible for the current tuitions for both daughters." (As far as the record reveals, the daughters were in grammar or secondary school at the time.) Paragraph eight provides that Dr. Girard will "be solely responsible for payment of 4 years of undergraduate education for both daughters provided this begins after graduation of high school." The parties agree that Delaware law governs all matters relating to the enforceability and interpretation of the Divorce Agreement.

During 2010 Dr. Girard satisfied his obligations under paragraph six and tendered monthly payments of $5,232 to petitioner. Petitioner did not report these payments as alimony income on line 11 of her 2010 Form 1040, U.S. Individual

[*4] Income Tax Return. Respondent issued a notice of deficiency determining that petitioner had taxable alimony income for 2010 in the amount of $62,784 ($5,232 × 12). Petitioner timely petitioned this Court, contending that the payments do not constitute "alimony" for Federal income tax purposes and are thus excludible from gross income.

## Discussion

### I. Standard of Review

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The submission of this case fully stipulated changes neither the burden of proof nor the effect of a failure of proof. Rule 122(b); Okerson v. Commissioner, 123 T.C. 258, 263 (2004). Petitioner does not contend, nor does the evidence establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

### II. Alimony Payments

Section 71(a) provides that "[g]ross income includes amounts received as alimony or separate maintenance payments." Section 71(b) defines the term "alimony or separate maintenance payment" to mean "any payment in cash" that satisfies four specified conditions. The parties agree that Dr. Girard's payments

[*5] satisfy the first three conditions. Their dispute focuses on the fourth condition, set forth in section 71(b)(1)(D). As relevant here, it provides that a payment constitutes alimony only if "there is no liability to make any such payment for any period after the death of the payee spouse."

In deciding whether payments constitute "alimony" under this provision, we begin by examining the terms of the Divorce Agreement. The parties agree that paragraph six does not explicitly state whether Dr. Girard's payment obligation would terminate upon petitioner's death. The drafting of this paragraph, however, gives rise to an inference that his payment obligation would not so terminate. First, paragraph six obligates Dr. Girard to pay $5,232 per month "for a continued 8 year period," without suggesting that this period would be cut short by petitioner's death. Second, paragraph six states two conditions that would terminate Dr. Girard's payment obligation, namely, petitioner's remarriage or cohabitation. If the parties had intended petitioner's death to be a third condition that would terminate Dr. Girard's payment obligation, paragraph six could easily have been drafted to say so. As a matter of contract interpretation, therefore, we think the better reading of the Divorce Agreement is that Dr. Girard's payment obligation would not terminate if petitioner were to die during the eight-year term.

**[\*6]**   If the instrument itself is silent or unclear as to the existence of a post-death obligation, the payments may still constitute "alimony" under section 71(b)(1)(D) if the payment obligation would terminate automatically, by operation of State law, upon the death of the payee spouse.  See Johanson v. Commissioner, 541 F.3d 973, 976-977 (9th Cir. 2008), aff'g T.C. Memo. 2006-105; Kean v. Commissioner, 407 F.3d 186, 191 (3d Cir. 2005), aff'g T.C. Memo. 2003-163.  Generally, we decline to engage in complex, highly technical inquiries into State law when making this determination.  Hoover v. Commissioner, 102 F.3d 842, 846 (6th Cir. 1996), aff'g T.C. Memo. 1995-183; Rood v. Commissioner, T.C. Memo. 2012-122, 103 T.C.M. (CCH) 1668, 1670.  If the relevant State law is ambiguous as to whether the payor spouse's obligation would terminate, we will read the divorce or separation instrument and make our own determination on the basis of the language of that document.  Hoover, 102 F.3d at 846.

In contending that Dr. Girard's payment obligation would terminate automatically upon petitioner's death, respondent relies on title 13, section 1512(g) of the Delaware Code (LexisNexis 2009).[2]  It provides:  "Unless the parties agree otherwise in writing, the obligation to pay future alimony is terminated upon the

---

[2]Unless otherwise indicated, all references to the Delaware Code (Del. Code) are to title 13.

**[\*7]** death of either party or the remarriage or cohabitation of the party receiving alimony." But Del. Code section 1512(g) does not apply to an agreement of the sort involved here. In Delaware, alimony determinations may be made in two ways: alimony may be judicially decreed following a hearing into the parties' respective financial circumstances, or it may be agreed to voluntarily by the divorcing parties themselves in a divorce agreement or similar contract. See Rockwell v. Rockwell, 681 A.2d 1017, 1019-1020 (Del. 1996). Section 1512(g) governs only alimony agreements that are judicially decreed; it "does not apply to voluntary alimony agreements." Stewart v. Stewart, 41 A.3d 401, 405 (Del. 2012).

The provision relevant here would appear to be Del. Code section 1519(b), which governs "Termination of Alimony." As the Delaware Supreme Court has stated, "Subsection 1519(b) contemplates settlements in the form of written alimony agreements between parties to a divorce without a judicial determination." Rockwell, 681 A.2d at 1020. The Divorce Agreement was a voluntary alimony agreement without a judicial determination. Although it was stamped as an "order" of the Family Court, that order explicitly states that it was entered "[w]ithout a hearing, without passing upon the substance, form, and/or fairness of the agreement, and without knowledge by the Court of the facts and circumstances concerning the negotiations of the parties."

**[\*8]**   Section 1519(b) provides: "Unless otherwise agreed by the parties in writing and expressly provided in the decree, the obligation to pay future alimony is terminated upon the death of either party or the remarriage of the party receiving alimony." We have discovered no Delaware cases interpreting the first clause of this provision: "Unless otherwise agreed by the parties in writing and expressly provided in the decree."[3] However, respondent cites a line of cases interpreting a similar provision of California law, which have ruled that an agreement "otherwise in writing" must be "specific and express." See <u>Johanson</u>, 541 F.3d at 977 (quoting <u>In re Marriage of Thornton</u>, 115 Cal. Rptr. 2d 380, 383 (Ct. App. 2002)).

The question we must decide, therefore, is whether, as required by Del. Code section 1519(b), it was "agreed by the parties in writing and expressly provided in the [divorce] decree" that Dr. Girard's support payments would continue if petitioner died within the eight-year period. It is unclear what meaning we should ascribe to the requirement that the parties' agreement to such effect must be "expressly provided in the [divorce] decree." Here, as is apparently typical for voluntary alimony agreements in Delaware, the Divorce Agreement was simply stamped "So Ordered" by the Delaware Family Court. That order did

---

[3]The Court ordered the parties to file supplemental briefs discussing Del. Code section 1519(b) and any relevant judicial precedent. The parties did not invite our attention to any Delaware judicial authority interpreting that section.

**[\*9]** not "provide" for anything, except to require that the Divorce Agreement be given legal effect according to its terms.

We thus accord principal weight to the statute's first requirement, which asks whether it was "agreed by the parties in writing" that Dr. Girard's support payments would continue if petitioner died within the eight-year payment period. As discussed previously, we think the better interpretation of the Divorce Agreement, on the basis of reasonable inferences drawn from it, is that Dr. Girard's payment obligation would continue in that event. Although this understanding was implicit rather than explicit, it is a point that appears to have been "agreed by the parties in writing" as required by Del. Code section 1519(b). We have discovered no Delaware case law addressing the question whether an agreement to this effect must be "specific and express." Cf. Johanson, 541 F.3d at 977 (quoting In re Marriage of Thornton, 115 Cal. Rptr. 2d at 383) (discussing similar provision of California law).

Given the available Delaware precedent, we find Del. Code section 1519(b) to be ambiguous as applied to the Divorce Agreement. In these circumstances, we do not engage in complex, subjective inquiries, but rather make our own determination on the basis of the language of the parties' agreement. Rood v. Commissioner, 103 T.C.M. (CCH) at 1670. This approach is consistent with the

[*10] general approach of the Delaware Supreme Court, which emphasizes contract interpretation principles in this setting. See, e.g., Rockwell, 681 A.2d at 1021 (stating that the incorporation of a voluntary alimony agreement into a Family Court order "does not divest that agreement of its contractual nature"); Stewart, 41 A.3d at 404 ("Where the Family Court is asked to terminate or modify a voluntary alimony agreement that is incorporated into a divorce decree, 'the proper standards are the same that are generally applicable to the modification, reformation, or rescission of contracts.'" (quoting Rockwell, 681 A.2d at 1021)).

As noted previously, the best interpretation of the Divorce Agreement, based on reasonable inferences drawn from it, is that Dr. Girard's payment obligation would not terminate if petitioner were to die during the eight-year payment period. Delaware law does not unambiguously provide for automatic termination in that event. We accordingly conclude that the payments do not constitute "alimony" because the Divorce Agreement does not, as required by section 71(b)(1)(D), eliminate "liability [of the payor spouse] to make any such payment for any period after the death of the payee spouse."[4] Because we have ruled for

---

[4]Given our disposition, we need not decide whether petitioner would prevail on the basis of her alternative argument, which focuses on the nature of Dr. Girard's support payments as "unallocated alimony/child support." It is unclear how the Delaware Supreme Court would treat an "unallocated" payment that could be

(continued...)

**[*11]** petitioner on the alimony issue, we find that she is not liable for the accuracy-related penalty.

<u>An appropriate order and decision</u>

<u>will be entered</u>.

---

[4](...continued)
partially allocable to child support, which in Delaware survives the death of the payee spouse and is payable until the last child reaches the age of 18. <u>See</u> Del. Code sec. 517(a). In deciding whether unallocated payments of this sort constitute "alimony" under section 71(b)(1)(D), we have reached different conclusions depending on the law of the particular State. <u>Compare</u> <u>Berry v. Commissioner</u>, T.C. Memo. 2005-91 (ruling that unallocated support payments constituted "alimony" because they terminated upon death of payee spouse under California law), <u>and</u> <u>Kean v. Commissioner</u>, T.C. Memo. 2003-163 (same, under New Jersey law), <u>aff'd</u>, 407 F.3d 186 (3d Cir. 2005), <u>with</u> <u>Lovejoy v. Commissioner</u>, 293 F.3d 1208 (10th Cir. 2002) (ruling that unallocated support payments did not constitute "alimony" because they did not terminate upon death of payee spouse under Colorado law), <u>aff'g</u> <u>Miller v. Commissioner</u>, T.C. Memo. 1999-273, <u>and</u> <u>Gilbert v. Commissioner</u>, T.C. Memo. 2003-92 (same, under Pennsylvania law), <u>aff'd sub nom.</u> <u>Hawley v. Commissioner</u>, 94 Fed. Appx. 126 (3d Cir. 2004). Neither party cites any Delaware law on this point, and the Court has found no conclusive answer based on its own research.